UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61448-CIV-MARRA/JOHNSON

CENTRAL YACHT AGENT, INC.,
a Florida corporation,

    Plaintiff,

vs.

VIRGIN ISLAND CHARTER YACHTS,
a Michigan corporation, et al.,

    Defendants.
_____/

**OPINION AND ORDER**

    This cause is before the Court upon Plaintiff Central Yacht Agent, Inc.'s Motion for Preliminary Injunction [DE 8]. The Court conducted an evidentiary hearing on the motion on December 17, 2007. Having considered the motion, the evidence filed with the Court, argument of counsel, testimony of witnesses and being otherwise fully advised in the premises, the Court finds it appropriate to deny the Motion for Preliminary Injunction.[1]

    Plaintiff owns and operates a website, www.CentralYachtAgent.com, that contains content, website design and images of certain yachts available for charter. Available yachts are shown on Plaintiff's website through the use of an e-brochure. A large amount of the data and images found on Plaintiff's website is obtained by Plaintiff at its own expense. Plaintiff receives payment from two different sources: 1) yacht owners that pay Plaintiff to list their charter vessel data and 2) subscribers who pay Plaintiff to use the listings for their own business purpose.

---

[1] In making its ruling, the Court did not rely on the supplemental declaration of Randy Storie [DE 20], filed December 28, 2007. Defendants submitted that affidavit after the close of evidence.

Subscribers are given a "feed" into Plaintiff's website, meaning that whenever Plaintiff makes a change to the information regarding a particular yacht on its website, that new information is instantly available on the subscriber's website.[2]

Defendants are former subscribers of Plaintiff. On or about February of 2007, images, content and website design from Plaintiff's website began appearing on Defendants' websites. That information, however, was not fed onto Defendants' website. Instead, Defendants had simply copied the information from Plaintiff's website. Thus, Defendants' information was not obtained from Plaintiff's live portal and therefore did not include certain updated information. By not using the live feed, Plaintiff's ability to provide accurate reports to its clients regarding the amount of web activity that a particular yacht generated became diminished. Lastly, the evidence showed that some of the images on Defendants' website contained a watermark with the phrase "Centralyachtagent.com."

> The conditions of use provided by Plaintiff states in relevant part:
>
> The text, images (and trademarks) published or displayed on CentralYachtAgent.com site are protected by intellectual property rights. The reproduction of any documents published on CentralYachtAgent.com is only authorised for the purpose of providing information for commercial use by CentralYachtAgent.com members and their clients. CYA reserves the right to take legal action in any jurisdiction in the event of unauthorised reproduction, transmission or use of material published or displayed on the CentralYachtAgent.com website.

(Pl. Ex. 2.)

In moving for a preliminary injunction, Plaintiff asserts that it has a likelihood of success on the merits. Plaintiff argues that while the contract permitted a live feed to Plaintiff's

---

[2] New information may include, but is not limited to, changes in availability of a yacht, changes to the yacht's crew, and new images of a yacht.

information, it did not allow Defendants to copy the information.  In addition, Plaintiff states that if Defendants are allowed to continue to display copied information on their websites, Plaintiff will be harmed. Defendants respond that the language in the conditions of use permit them to "reproduce" the documents, images and information on Plaintiff's website.  In other words, Defendants argue that Plaintiff is unlikely to succeed on the merits.  Moreover, Defendants contend that Plaintiff has failed to show irreparable harm and that any harm to Plaintiff is speculative.

In granting a preliminary injunction, the Court must determine if the movant has demonstrated substantial likelihood of success on the merits and whether an irreparable injury would occur unless the injunction issues.  Additionally, the movant bears the burden to show that the threatened injury to the movant outweighs any damage the proposed injunction may cause the opposing party and that the injunction would not be adverse to the public interest.  See Int'l Cosmetics Exch., Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242, 1246 (11th Cir. 2002); McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). Granting a preliminary injunction falls within the Court's equitable powers and is appropriate when a legal right has been infringed by an injury for which there is no adequate legal remedy.  Alabama v. U.S. Army Corps of Engineers, 424 F.3d 1117, 1127 (11th Cir. 2005); Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004).  "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) citing McDonald's Corp., 147 F.3d at 1306 (internal quotation marks omitted).  To make a showing of irreparable harm, which is "the sine qua non of injunctive relief," the movant must demonstrate

an injury that "is neither remote nor speculative" but instead "actual and imminent." Siegel, 234 F.3d at 1176; Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir.1995).

With these principles in mind, the Court will examine whether Plaintiff has met its burden. To make a determination regarding the likelihood of success on the merits, it is necessary to review the language of the contract. The Court finds that the contract terms are ambiguous and it is unclear what information Defendants are permitted to reproduce on their own websites. Notably, the contract does not differentiate between "feed" and "copy." Instead, the contract authorizes the "reproduction of any documents published on CentralYachtAgent.com . . . for the purpose of providing information for commercial use by CentralYachtAgent.com members and their clients." Plaintiff insists that "documents" are limited to four items; namely, a credit card authorization form, a form to add an individual to an existing account, a form to assign Plaintiff exclusive rights as an agent for a yacht and a form identified as "yacht specs to be turned in to Managing central agent along with signed authorization." (DE 18.)  These documents do not include any information that Plaintiff's members or their clients can use commercially; instead, they are forms used to transact business between Plaintiff and its customers. Given that these documents provide no information that would induce a potential customer to charter a yacht, subscribers plainly have no need to reproduce these items.

Clearly, then, the term "documents" must include other "information for commercial use." Other information that would be useful to Plaintiff's customers includes the e-brochure required for all yachts listed on Plaintiff's website. Although Plaintiff claims that the copying of information beyond the four items identified supra is prohibited by the contract language stating that the "text, images (and trademarks)" are "protected by intellectual property rights," the Court

4

Case 0:07-cv-61448-KAM   Document 21   Entered on FLSD Docket 12/28/2007   Page 5 of 6

disagrees. Nothing in that language conveys what information from Plaintiff's website can or cannot be copied by Defendants.

It is axiomatic that Florida law requires that a contract be interpreted against the drafter when the contract contains ambiguous terms.  <u>Excelsior Ins. Co. v. Pomona Park Bar & Package Store</u>, 369 So. 2d 938, 942 (Fla. 1979); <u>Vargas v. Schweitzer-Ramras</u>, 878 So. 2d 415, 417 (Fla. Dist. Ct. App. 2004); <u>RX Solutions, Inc. v. Express Pharmacy Svcs., Inc.</u>, 746 So. 2d 475, 477 (Fla. Dist. Ct. App. 1999).  Given that the terms of the contract are ambiguous, the Court must interpret the contract against Plaintiff.  In doing so, the Court believes that it is unlikely that Plaintiff will succeed in showing that the contract only permitted Defendants to "feed" but not "copy" material from its website.

Additionally, the Court finds that Plaintiff has failed to show irreparable harm.  Plaintiff's evidence on this point either does not rise to the level of irreparable harm or is simply speculative.  With respect to the argument that Defendants' actions interfere with Plaintiff's ability to generate reports, the Court finds that this harm is not irreparable.  Indeed, Plaintiff has not shown any loss of business as a result of inaccurate reporting.  At the very minimum, such a showing would be necessary to obtain the extraordinary remedy of a preliminary injunction.  Finally, although Plaintiff claims that misinformation on Defendants' website could result in diminished trust of Plaintiff by Plaintiff's customers, the Court finds the evidence on this point to be entirely speculative.  Misinformation on Defendants' website would more likely cause customers to stop using Defendants' service, not Plaintiff's.  In any event, to the extent that customers impute Defendants' misinformation to Plaintiff, the Court notes that no evidence was presented that Plaintiff has suffered a loss of business or reputation.

5

Having found that Plaintiff has failed to establish the essential requirements of irreparable injury or likelihood of success on the merits, it is unnecessary to consider the other required showings. Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiff Central Yacht Agent, Inc.'s Motion for Preliminary Injunction [DE 8] is **DENIED.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 28th day of December 2007.

_____
KENNETH A. MARRA
United States District Judge

Copies to:

All counsel of record